IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL ACTION NO. 1:19-CV-85-MOC

| | |
|---|---|
| **RACHEL DOLL,** )<br>)<br>Plaintiff, )<br>)<br>Vs. )<br>)<br>**ANDREW M. SAUL,** )<br>Commissioner of Social Security, )<br>)<br>Defendant. )<br>) | ORDER |

**THIS MATTER** is before the Court on the parties' opposing Motions for Summary Judgment. (Doc. Nos. 9, 10). The matter is ripe for review. Having carefully considered such motions and reviewed the pleadings, the court enters the following findings, conclusions, and Order.

**FINDINGS AND CONCLUSIONS**

**I.    Administrative History**

Plaintiff brought this action, under 42 U.S.C. §§ 405(g) and 1383(c)(3), for review of defendant's final administrative decision denying her January 9, 2015, applications for a period of disability and disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II & XVI of the Social Security Act ("the Act").

Plaintiff's DIB and SSI applications originally alleged disability onset of January 18, 2014, but were later amended at the hearing to June 1, 2014. (Tr. 11). The applications were denied initially on May 19, 2015, and, upon reconsideration, on September 3, 2015. (Id.). Plaintiff timely requested an administrative hearing, which was held on August 3, 2017. (Tr.

107-145). An Administrative Law Judge ("ALJ") decision denying benefits was made on January 18, 2018. (Tr. 11-28).

Plaintiff's insured status for DIB benefits expired on December 31, 2019. (Tr. 14, Finding 1). Plaintiff appealed to defendant's Appeals Council (AC), which, on February 13, 2019, denied Plaintiff's request for review, thereby causing the ALJ's decision to become the "final decision" of the Commissioner. (Tr. 1-6). Plaintiff submitted additional medical evidence to the AC, but the evidence was not exhibited, because it was not relevant to the time period in question and/or did not show a reasonably probability it would change the outcome of the decision. (Tr. 2). Plaintiff now seeks judicial review of this decision pursuant to 42 U.S.C. § 405(g).

## II. Factual Background

It appearing that the ALJ's findings of fact are supported by substantial evidence, the Court adopts and incorporates such findings herein as if fully set forth. Such findings are referenced in the substantive discussion which follows.

## III. Standard of Review

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Review by a federal court is not de novo, Smith v. Schwieker, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Perales, 402 U.S. at 401 (internal citations omitted). Even if the Court were to find that a preponderance of the evidence weighed against the Commissioner's decision, the Commissioner's decision would have to be affirmed if it was supported by substantial

evidence. Hays, 907 F.2d at 1456. The Fourth Circuit has explained substantial evidence review as follows:

> the district court reviews the record to ensure that the ALJ's factual findings are supported by substantial evidence and that its legal findings are free of error. If the reviewing court decides that the ALJ's decision is not supported by substantial evidence, it may affirm, modify, or reverse the ALJ's ruling with or without remanding the cause for a rehearing. A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence. If the reviewing court has no way of evaluating the basis for the ALJ's decision, then the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.

Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013) (internal citations and quotations omitted).

## I. Substantial Evidence

### A. Introduction

The Court has read the transcript of Plaintiff's administrative hearing, closely read the decision of the ALJ, and reviewed the relevant exhibits contained in the extensive administrative record. The issue is not whether a court might have reached a different conclusion had it been presented with the same testimony and evidentiary materials, but whether the decision of the administrative law judge is supported by substantial evidence. For the following reasons, the Court finds that the ALJ's decision was supported by substantial evidence.

### B. Sequential Evaluation

The Act defines "disability" as an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(2). To qualify for DIB under Title II of the Act, 42 U.S.C. §§ 416(i) and 423, an individual must meet the insured status requirements of these sections, be

under retirement age, file an application for disability insurance benefits and a period of disability, and be under a "disability" as defined in the Act.

Here, Plaintiff's date last insured (DLI) for DIB was December 31, 2019. (Tr. 14, Finding 1). Therefore, she would have to prove she became disabled on or before the DLI.

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled. The Commissioner evaluates a disability claim pursuant to the following five-step analysis:

a. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

b. An individual who does not have a "severe impairment" will not be found to be disabled;

c. If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix 1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;

d. If, upon determining residual functional capacity, the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

e. If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience, must be considered to determine if other work can be performed.

20 C.F.R. § 416.920(a)-(f). The burden of proof and production during the first four steps of the inquiry rests on the claimant. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step,

the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. Id.

### C. The Administrative Decision

In a decision dated January 18, 2018, (Tr. 1 at pp. 11-28), the ALJ found Plaintiff had the following severe impairments: carpal tunnel syndrome, status post release surgery on the left hand, peripheral neuropathy, anxiety, post-traumatic stress disorder, affective disorder, and obesity. (Tr. 14, Finding 3). The ALJ also found that Plaintiff has a non-severe impairment of thyroid disease. (Id.). The ALJ assessed moderate impairments in understanding, remembering, or applying information; in interacting with others; in adapting or managing oneself; and in concentrating, persisting, or maintaining pace. (Tr. 15-16). In discussing concentration, the ALJ noted that Plaintiff "could concentrate long enough to perform daily activities such as shower, dress, take care of her foster dogs, prepare simple meals, grocery shop, and pay her bills." (Tr. 16). The ALJ further found Plaintiff had the residual functional capacity (RFC)[1] to perform a restricted range of light work. (Tr. 17, Finding 5).

Physically, the ALJ limited Plaintiff to no climbing of ladders, ropes, or scaffolds and to occasional balancing and climbing ramps and stairs. (Id.). The ALJ also limited Plaintiff to frequent fingering and feeling with the bilateral upper extremities. (Id.). Nonexertionally, the ALJ limited Plaintiff to simple, routine, and repetitive tasks (SRRTs). (Id.). In so doing, the ALJ specifically found that Plaintiff's time off task could be accommodated by normal breaks. (Id.). The ALJ restricted Plaintiff to occasional interaction with supervisors, coworkers, and the public. (Id.). The ALJ further found that Plaintiff must avoid concentrated exposure to vibration

---

[1] RFC is defined as the most one can do despite one's impairments. 20 C.F.R. § 404.1545.

and can only tolerate few changes in the routine work setting and thus limited her to no exposure to hazards, such as unprotected heights or dangerous moving machinery. (Id.).

The ALJ detailed the evidence considered in formulating the RFC. (Tr. 17-26). Therefore, the ALJ performed a functional analysis in determining RFC. Based on the established RFC, the ALJ denied benefits, with the help of vocational expert (VE) testimony, at Step 5 of the sequential evaluation process, finding Plaintiff would be able to perform other jobs existing in significant numbers in the national economy. (Tr. 26-27, Finding 10). Having propounded a hypothetical question to the VE with the established RFC, the VE testified such a hypothetical person could perform certain unskilled light exertional jobs. (Tr. 140). The VE enumerated the jobs of office helper, enumerated in the Dictionary of Occupational Titles (DOT) (DOT number 239.567-010); routing clerk (DOT number 222.687-022); and shipping and receiving weigher (DOT number 222.387-074). (Tr. 141). The VE indicated her testimony was consistent with the DOT. (Id.).

## II. Discussion

Plaintiff raises two challenges to the ALJ's decision: (1) the ALJ failed to explain an alleged apparent reasoning level 2 and 3 conflict between the VE's testimony and the DOT, violating the Henderson and Thomas cases, and (2) the AC erred in determining that evidence presented to it did not warrant remand to the ALJ.

**A. Plaintiff's Contention that a Reasoning Conflict Exists between the VE's Testimony and the DOT.**

The ALJ found Plaintiff had the RFC to perform a restricted range of light work. (Tr. 17, Finding 5). Nonexertionally, the ALJ limited Plaintiff to SRRTs. (Id.). The ALJ further restricted Plaintiff to occasional interaction with supervisors, coworkers, and the public. (Id.).

Per VE testimony, the ALJ found Plaintiff was able to perform the jobs of office helper (DOT number 239.567-010); routing clerk (DOT number 222.687-022); and shipping and receiving weigher (DOT number 222.387-074). (Tr. 141). The office helper and routing clerk have reasoning levels of 2, while the shipping and receiving weigher has a reasoning level of 3. All these jobs are unskilled (SVP of 2). The VE testified that all of these jobs exist in significant numbers. (Tr. 141). The VE further testified that no conflict existed with the DOT. (Id.).

**1. Reasoning Levels 2 and 3**

First, as to Plaintiff's contention that a GED reasoning level of 2 is inconsistent with SRRTs, courts have held that a GED reasoning level of 2 does not preclude the performance of SRRTs and, therefore, does not present any apparent conflict which needs to be addressed pursuant to Pearson v. Colvin, 810 F.3d at 210-12 (4th Cir. 2015). In Sigmon v. Berryhill, No. 5:17-cv-120, 2018 WL 4576788 at *4 (W.D.N.C. Apr. 5, 2018), the Court, referencing Henderson, stated:

> Plaintiff argues that the office helper and inspector/packer jobs identified by the V.E. require GED reasoning levels of two, which conflicts with the RFC limitation to simple, routine, repetitive tasks. This Court has consistently held that there is no conflict between reasoning level two work and a limitation to simple tasks. Courtney v. Colvin, No. 12cv0073, 2014 WL 1882583, at * 3 (W.D.N.C. May 12, 2014) (citing Pippen v. Astrue, No. 1:09cv308, 2010 WL 3656002, at *7 (W.D.N.C. Aug. 24, 2010) ("work requiring a reasoning level of two is not inconsistent with a limitation to simple work")). The Fourth Circuit's unpublished decision in Henderson v. Colvin, 643 F. App'x 273, 276-77 (4th Cir. Apr. 5, 2016) cited by Plaintiff does not suggest a different result. There, the Court addressed a limitation to "one-to-two step tasks," which is different from the RFC limitation here. Id.

A limitation to routine tasks indicates that any instructions would be uninvolved to satisfy reasoning level 2 concerns, which require employees to carry out "detailed but uninvolved" instructions. Accord Lambert v. Berryhill, No. 5:18-CV-00028-RJC-DSC, 2019 WL 1354038, at *6 (W.D.N.C. Mar. 26, 2019) (footnotes omitted). See also, e.g., Beasley v. Berryhill, No.

1:17-CV-00294-RJC, 2019 WL 1330928, at *4 (W.D.N.C. Mar. 25, 2019); Kiser v. Berryhill, No. 3:17-CV-00739 FDW, 2019 WL 1173376, at *6 n.2 (W.D.N.C. Mar. 13, 2019). Thus, this contention does not require remand.

Courts have also held that a GED reasoning level of 3 does not preclude the performance of SRRTs. In Simons v. Commissioner, No. RDB 17-1837, 2018 WL 3416943 at *3 (D. Md. 2018), the Court stated:

> Several district courts within the Fourth Circuit have held that there is no apparent conflict between Reasoning Level 3 jobs and RFC limitations to "simple, routine tasks" or "simple decisions." See, e.g., Johnson v. Comm'r, Soc. Sec. Admin., Civil Action No. ADC-17-1819, 2018 WL 2248412, at *10-11 (D. Md. May 16, 2018) (holding that there was no apparent conflict between the claimant's RFC limitation to "simple, routine, repetitive tasks" and Reasoning Level 3 jobs, while noting that "this Court has consistently found that reasoning levels of two or three are consistent with limitations to simple instructions."); Clarkson v. Comm'r, Civil No. SAG-11-631, 2013 WL 308954, at *1-2 (D. Md. Jan. 24, 2013) (holding that there is "no inherent inconsistency" between the claimant's RFC limitation to "low concentration, low memory and simple routine work" and Reasoning Level 3 jobs); but see Halpern v. Colvin, Civil No. TDC-14-2538, 2016 WL 429965, at *10 (D. Md. Feb. 4, 2016) (holding that, although "there is an apparent conflict between the [RFC] to perform simple, repetitive tasks, and the demands of Level 3 Reasoning," the ALJ's failure to reconcile this apparent conflict was harmless because the VE identified other jobs consistent with the claimant's RFC) (citing Zavalin, 778 F.3d at 847).

Other courts not specifically referenced in Simons have also held that a GED reasoning level of 3 does not preclude performance of SRRTs. See O'Neill v. Berryhill, No. 5:16-CV-129-DCK, 2017 WL 2469243 (W.D.N.C. June 7, 2017), aff'd, 723 F. Appx. 240 (4th Cir. May 25, 2018). See also Carringer v. Colvin, No. 2:13-cv-00027-MOC, 2014 WL 1281122, at *3 (W.D.N.C. Mar. 27, 2014) ("There is no direct correlation between the DOT's reasoning levels and a limitation to carrying out simple instructions or performing simple work; thus, jobs requiring an individual to perform such work is consistent with a DOT reasoning level of either 2 or 3."); Clontz v. Astrue, No. 2:12-cv-00013-FDW, 2013 WL 3899507, at *5 (W.D.N.C. July 29,

2013) (no inconsistency between reasoning level 3 and a limitation to simple, unskilled work); Martin v. Colvin, No. 1:14-cv-00234-RLV, 2015 WL 9094738, at *5 (W.D.N.C. Dec. 16, 2015) (finding "no merit" in the argument that reasoning level 3 is "inconsistent with the RFC's finding that Claimant is limited to simple, unskilled work").

    **2. Thomas**

Next, as to Plaintiff's contention that the ALJ's decision is contrary to the Fourth Circuit Court of Appeals' decision in Thomas v. Berryhill, the RFC in this case is distinguishable from the RFC adjudicated in that case. 916 F.3d 307 (4th Cir. 2019). In Thomas, the RFC limited the claimant to "short" instructions. The word "short" does not appear in the RFC limitation in this case. A meaningful difference exists between a limitation to perform only SRRTs—Plaintiff's RFC limitation here—and a limitation to only receive and follow short, simple instructions—the RFC limitation in Thomas. The first limitation accounts for a claimant's ability to perform certain job tasks, while the second limitation accounts for a claimant's ability to comprehend job tasks. Thomas is, therefore, distinguishable from this case. Accord Lambert v. Berryhill, No. 5:18-cv-00028-RJC, 2019 WL 1354038, at *6 (W.D.N.C. Mar. 26, 2019) (footnotes omitted). See also, e.g., Beasley v. Berryhill, No. 1:17-cv-00294-RJC, 2019 WL 1330928, at *4 (W.D.N.C. Mar. 25, 2019); Kiser v. Berryhill, No. 3:17-cv-00739-FDW, 2019 WL 1173376, at *6 n.2 (W.D.N.C. Mar. 13, 2019). Furthermore, the Fourth Circuit recently confirmed that an ALJ's finding that the plaintiff could perform jobs limited to "simple, routine repetitive tasks of unskilled work" did not conflict with the DOT's definition of Level 2 reasoning. Lawrence v. Saul, No. 18-1112, 2019 WL 5445048, at *3 (4th Cir. Oct. 24, 2019) ("In Thomas v. Berryhill, this court found an apparent conflict between the claimant's residual functional capacity, which limited her to jobs involving 'short, simple instructions,' and Level 2's concept of 'detailed but

uninvolved instructions.'" 916 F.3d at 313–14. [Plaintiff] asserts that there is no meaningful difference between Thomas's residual functional capacity and hers, which limits her to 'simple, routine, repetitive tasks.' We disagree."). Therefore, here, the jobs identified by the VE raised no apparent conflict with the DOT's reasoning levels of 2 or 3, as argued by Plaintiff. Furthermore, the VE has identified significant numbers of jobs in each reasoning level to support a denial of benefits. Accordingly, this argument does not present a basis for remand.

**B. Evidence presented to the Appeals Council**

Plaintiff next contends that remand is warranted based on additional evidence she submitted to the AC, as Plaintiff argues that this new evidence may have affected the fact-finder's decision. This evidence consisted of medical records dated both before and after the ALJ's decision of January 18, 2018, which became the final decision of the Commissioner. Specifically, on January 2, 2018, Hugo Fonseca, a rheumatologist, evaluated Plaintiff for complaints of fibromyalgia.[2] Plaintiff reported pain "all over" and joint pains in her ankles, lower back, and thumbs which she described as burning, throbbing, sharp, and worsening. She rated her pain at 5/10 to 10/10. Plaintiff reported that her pain was moderate, constant, and aggravated by stress or over-exertion. She reported stiffness lasting all day associated with diffuse pain. Plaintiff also reported associated symptoms of weakness, numbness, and redness, as well as intermittent sicca symptoms, depression, anxiety, and fatigue. Dr. Fonseca noted that Plaintiff was antinuclear antibody ("ANA") positive. He noted that she had a history of fibromyalgia for more than ten years and was currently on gabapentin and Cymbalta.

---

[2] Plaintiff also submitted new evidence to the AC related to Plaintiff's doctor visits to a Dr. Moriarity, but Plaintiff does not raise this evidence in her summary judgment motion. Thus, this issue is waived. See Merrill v. Saul, No. 1:19cv50, 2019 WL 5075979, at *3 n.2 (W.D.N.C. Oct. 8, 2019).

On examination, Dr. Fonseca found Plaintiff to have normal strength and tone. He found 18/18 positive tender points. Dr. Fonseca diagnosed Sjorgren's syndrome, raised antinuclear antibody, fibromyalgia, and long-term current use of drug therapy. Dr. Fonseca prescribed Plaquenil and continued Plaintiff on Cymbalta and gabapentin. (R. 93-97). On February 28, 2018, Dr. Fonseca reevaluated Plaintiff and noted that she was tolerating Plaquenil. Plaintiff reported stopping gabapentin and Cymbalta on her own and felt her pain was worse. Dr. Fonseca resumed Plaintiff's gabapentin, stopped Cymbalta, and increased her dose of Plaquenil. (R. 90-93). On May 2, 2018, Dr. Fonseca reevaluated Plaintiff for fibromyalgia. He found Plaintiff to have normal strength, tone, and normal movement of all extremities. Dr. Fonseca also found 14 positive tender trigger points. He administered an injection in Plaintiff's right hand for trigger finger and he continued Plaintiff's medications, increasing her dose of Plaquenil. (R. 86-90).

The Appeals Council included this evidence into the record but rejected consideration of the evidence, stating,

> You submitted medical records from Park Ridge Health, dated January 2, 2018 through May 2, 2018 (21 pages) and Angel Medical Center, dated June 8, 2017 through November 21, 2017 (37 pages). The Administrative Law Judge decided your case through January 18, 2018. This additional evidence does not relate to the period at issue. Therefore, it does not affect the decision about whether you were disabled beginning on or before January 18, 2018.

(R. 2).

**1. Reasonable Probability Standard**

As to evidence dated before the ALJ's decision, the regulations require a claimant to inform the agency about or submit all known evidence that relates to whether the claimant is blind or disabled. 20 C.F.R. §§ 404.1512(a), 416.912(a). The regulations provide that this duty is ongoing and applies at each level of administrative review, such that a claimant must "disclose

any additional related evidence about which [he or she] become[s] aware." Id. Coupled with this duty, the regulations, 20 C.F.R. §§ 404.935(a) and 416.1435(a), require a claimant to make every effort to ensure that an ALJ receives all of the evidence, and require the claimant to submit or inform the ALJ about any written evidence no later than five business days before the date of the scheduled hearing, unless one or more of the circumstances set forth in 20 C.F.R. §§ 404.935(b) and 416.1435(b) apply. If a claimant has additional evidence but misses the five-day deadline and none of the circumstances set forth at 20 C.F.R. §§ 404.935(b) and 416.1435(b) apply, the ALJ may decline to consider or obtain the evidence. 20 C.F.R. §§ 404.935(a), 416.1435(a).

Here, the ALJ was not informed about any additional evidence dated before the ALJ's decision. As to evidence dated both before and after the ALJ's decision, if the claimant submits additional evidence to the AC, the AC will grant the claimant's request for review only if, in addition to meeting several other requirements, there is a reasonable probability that the additional evidence would change the outcome of the decision. 20 C.F.R. §§ 404.970(a) (5), (b), 416.1470(a) (5), (b). The reasonable probability standard is a new regulatory standard that became effective on January 1, 2017. Reasonable probability is now the regulatory standard to be applied in determining if remand is warranted. Accordingly, the AC denied review and did not exhibit such evidence but included it in the administrative transcript. Id.

**2. Court Jurisdiction to Review**

On judicial review, the Court reviews the record as a whole, including any additional evidence that the Appeals Council incorporated into the record. See Wilkins v. Sec'y, Dep't of Health & Human Servs., 953 F.2d 93, 96 (4th Cir. 1991). Here, technically, the AC did not incorporate into the record the evidence at issue because it was not exhibited.

**3. The AC's Rationale in Denying Review is not a Justiciable Issue**

Plaintiff argues that the AC erred in its "finding" that the newly submitted evidence from Dr. Fonseca did not relate to the period in issue. The rationale given by the AC in denying a request for review is not subject to court review like Findings made by the ALJ in the denial decision at issue. If the Appeals Council denies the claimant's request for review, it need not explain its rationale for doing so. See Meyer v. Astrue, 662 F.3d 700, 705 (4th Cir. 2011).

The question of whether the AC erred in not correctly explaining why it denied review is not a justiciable issue. The disability regulations do not require the AC to articulate its rationale for denying a request for review. See Meyer v. Astrue, 662 F.3d 700, 705 (4th Cir. 2011). As stated in Meyer, 662 F.3d at 704, the argument that the AC erred in its rationale in denying review "rests on a misunderstanding of the role of the Appeals Council and misreading of our precedent." As stated in Meyer, 662 F.3d at 705, "nothing in the Social Security Act or regulations promulgated pursuant to it requires that the Appeals Council explain its rationale for denying review." "Only if the Appeals Council grants a request for review and issues its own decision on the merits is the Appeals Council required to make findings of fact and explain its reasoning." Meyer, 662 F.3d at 705 (citing 20 C.F.R. §§ 404.979, 404.1527(t)(3)). See also Sutton v. Berryhill, No. 5:17-CV-48-FL, 2017 WL 7053966, at *2 (E.D.N.C. Dec. 19, 2017), adopted by 2018 WL 576847 (E.D.N.C. Jan. 26, 2018) (when a claimant challenged the Appeals Council's failure to consider additional evidence, holding, "Here, the Appeals Council did not grant review, and therefore, it was not required to explain its reasoning for determining that the evidence submitted after the ALJ's decision did not warrant changing the ALJ's decision."). Moreover, even if the AC does explain its rationale for review, as stated in Meyer, 662

F.3d at 705, "the statutory scheme governing social security disability benefits, however, offers no support for the contention that an Appeals Council decision to deny review when new evidence is submitted is a final decision ... subject to judicial review."

### 4. The Alleged New Evidence Does Not Warrant Court Remand

The alleged new evidence does not show a reasonable probability it would change the outcome of the decision. As argued in Plaintiff's brief, the new evidence from Dr. Fonseca confirms that Plaintiff suffers from fibromyalgia. Even, assuming arguendo, that it does, the Commissioner submits this fact does not show a reasonable probability the ALJ's decision would have changed. A mere diagnosis does not mean that the diagnosed illness is disabling with regard to functionality. See, e.g., Craig v. Chater, 76 F.3d 585 (4th Cir. 1996); English v. Shalala, 10 F.3d 1080 (4th Cir. 1993); Kasey v. Sullivan, 3 F.3d 75 (4th Cir. 1993). As was well stated in Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988), a "mere diagnosis ... says nothing about the severity of the condition." See also Pendley v. Astrue, 2013 WL 819337, at *5 (Mar. 6, 2013) ("Plaintiff, who carries the burden through Step 4, has failed to show objective medical evidence that a condition . . . caused more than a minimal effect on her ability to function.").

Even Plaintiff's brief notes the fact that upon examination on January 2, 2018 (before the ALJ's decision), Dr. Fonseca found Plaintiff to have normal muscle strength and tone. (Tr. 96). In fact, at that time, Dr. Fonseca also found normal movement of all extremities and no synovitis. (Id.). Dr. Fonseca also found full range of motion and no swelling of Plaintiff's hands, wrists, elbows, shoulders, ankles and knees. (Id.). He also found at that time full range of motion of Plaintiff's spine and hips. (Id.). On examination on May 2, 2018 (after the ALJ's decision), Dr.

Fonseca found Plaintiff in no apparent distress (NAD). (Tr. 88). Again, she had normal muscle tone and strength, normal movements of all extremities and no synovitis. (Id.). Other findings were the same as previously stated. (Tr. 88-89).

Plaintiff indicated to Dr. Fonseca that she had suffered from fibromyalgia for greater than 10 years. (Tr. 88). The Commissioner submits this did not prevent her from performing her past relevant work as an administrative clerk. (Tr. 26, Finding 6). Plaintiff also testified at the administrative hearing that she cares for 3 foster dogs. (Tr. 128-29). Furthermore, the ALJ noted that Plaintiff's "physical exams consistently showed a normal, non-antalgic gait without use of an assistive device." (Tr. 25).

Moreover, it is the claimant's burden to establish how any medically determinable impairments affect functioning. See 20 C.F.R. §§ 404.1512(c) & 416.912(c); see also, e.g., Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("[t]he burden of persuasion . . . to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five"); Plummer v. Astrue, No. 5:11-cv-00006, 2011 WL 7938431, at *5 (W.D.N.C. Sept. 26, 2011) (Memorandum and Recommendation) ("[t]he claimant bears the burden of providing evidence establishing the degree to which her impairments limit her RFC") (citing Stormo), adopted, 2012 WL 1858844 (May 22, 2012), aff'd, 487 F. App'x 795 (4th Cir. Nov. 6, 2012). Plaintiff has failed to meet that burden, as the alleged new evidence submitted to the AC does not show a reasonable probability it would change the outcome of the decision and, therefore, court remand is not warranted.

In light of the foregoing, the Commissioner's final decision that Plaintiff is not disabled within the meaning of the Act will be affirmed. That decision is in accordance with the proper legal standards and is supported by substantial evidence in the administrative record.

### III. Conclusion

The Court has carefully reviewed the decision of the ALJ, the transcript of proceedings, Plaintiff's motion and brief, the Commissioner's responsive pleading, and Plaintiff's assignments of error. Review of the entire record reveals that the decision of the ALJ is supported by substantial evidence. Finding that there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Perales, 402 U.S. at 401, Plaintiff's Motion for Summary Judgment will be denied, the Commissioner's Motion for Summary Judgment will be granted, and the decision of the Commissioner will be affirmed.

### ORDER

**IT IS, THEREFORE, ORDERED** that:

(1) The decision of the Commissioner, denying the relief sought by Plaintiff, is **AFFIRMED;**

(2) Plaintiff's Motion for Summary Judgment, (Doc. No. 9) is **DENIED;**

(3) The Commissioner's Motion for Summary Judgment, (Doc. No. 10) is **GRANTED;** and

(4) This action is **DISMISSED.**

Signed: November 8, 2019

Max O. Cogburn Jr
United States District Judge